Good morning, Your Honor. My name is Tarun Bittar. I'm appearing on behalf of my petitioner, Sandeep Kumar Agarwal. Your Honor, the issue in this case is whether the BIA are in denying the petitioner's application for asylum with holding of removal and convention against torture under the Immigration and Nationality Act and also under the Article 3 of the Convention Against Torture. BIA denied the claim that petitioner failed to provide a credible and corroborating claim. I don't feel that worse credibility is supported by reasonable and substantial evidence on the record. Your Honor, petitioner tried to comply with the Real ID Act by providing corroborating evidence in this case. For example, he provided his father's affidavit and also he provided affidavit from the doctor. There is no doubt that father's affidavit could have been more detailed, but the problem really is that the father's affidavit doesn't say anything about the incident in which Charma braces his claim. That's correct, Your Honor. Father doesn't also say anything that would indicate that any that would substantiate Charma's position that that he there's continuing interest. That's true, Your Honor. The father's affidavit said that father was arrested because of his son. And when father was arrested, police told him that his his son is accused of involving with the terrorists. So it still corroborates the evidence and it's enough to corroborate the evidence, Your Honor, for the record. Okay. And also the doctor's affidavit, I understand even doctor's affidavit is not in detail. It could have been. But doctors mentioned about the injuries of the petitioners and which is consistent with the testimony of the petitioner in the court. Though doctor did not talk about the date of treatment in his affidavit, but, Your Honor, that omission should not be the basis of adverse credibility. Well, how does how does one find from from that affidavit that that he was treated for the same thing that he says he suffered at the time? I mean, it's tough because putting aside the hospitalization thing, it it it's it just could have happened any time. That's correct. If you accept if you accept the doctor's recitation. That's correct, Your Honor. But doctors specifically said about his injuries and client testified in the court about his injuries. And that is the doctor's affidavit is consistent to his injuries, whatever he testified in the court. And I believe that is enough to corroborate the record. Okay. Just to get to the bottom line, why do you believe that this is the kind of extraordinary case under the Real ID Act that compels the BIA to to have found persecution? Your Honor, I believe the petitioner establishes his claim under the imputed political opinion because he was accused by the police that he has relations with he has involvement with extremists and he was arrested and he was tortured and there was no formal charges filed against him. And according to the client's testimony, if he returned back to India, he will be tortured again and maybe killed by the police. So that's why I feel that he established his claim under the imputed political opinion and he should be his petition should be granted, Your Honor. You know, ordinarily, if the I.J. thinks that the corroborating evidence is not adequate, he'd probably on request granted continuance so that more evidence or corroboration could be furnished. But here, these things came, they were faxed the morning of the hearing. This had been going on for many months and the petitioner in this case would have had ample opportunity to do a better job of getting the corroboration. So here's the I.J. faced with these documents, which are marginal at best and it's hard to see how he would have said that this is a case where the I.J. should have granted the continuance and said, you know, you need to get some more corroboration. That's true, Your Honor. In this case, when the client got the fax in the morning, Your Honor, we filed and the government lawyer never objected to the documents and judge admitted to the record and we never had opportunity to ask the client why the documents are coming on the time because it was admitted in the record. But the real thing is, which is not in the record, Your Honor, client's family mailed the paperwork to him, which was misplaced in the mail and he never received it. Then on the last moment, he got the fax from India. That's what happened. Because judge admitted the documents in the record, that's why we didn't go deep to ask him questions on that. Why didn't he get before? And if we could have seen the documents, Your Honor, in advance, then there should be, you know, we could ask the parents to send us another affidavit, a more detailed one. This is a case where the government says, well, I think these are admissible, all right, no problem with that, but it goes to the weight and we have a very heavy burden under the real I.D. to prove that the I.J.'s conclusions were inadequate. So, Your Honor, in this case, I think Petitioner gave testimony which was consistent with his written declaration and he was credible and it was a detailed testimony. And I'll keep my time, Your Honor, for the rest. All right. Thank you. May it please the Court, Breanna Stripley on behalf of the Respondent, the Attorney General. This Court should affirm the immigration judge's decision and deny the petition for review because Mr. Sharma failed to demonstrate that the record compels a contrary finding that he is credible, particularly under the heightened credibility requirements of the Real I.D. Act. This Court has noted that with the passage of the Real I.D. Act, the review of the Court of the immigration judge's adverse credibility finding is significantly restricted. In fact, this Court has held that under the Real I.D. Act standard, quote, only the most extraordinary circumstances will justify overturning an adverse credibility determination. This is simply not one of those extraordinary circumstances. The immigration judge gave specific and cogent reasons for his adverse credibility determination. For example, he found an inconsistency between the testimony of Mr. Sharma and the purported doctor's letter, namely that Sharma testified he was never hospitalized as a result of the abuse and the letter, in fact, stated from the doctor that he was hospitalized. There is really, I've seen this in one or two other cases where hospital and clinics seem to be used interchangeably or perhaps not used in the way that we would use them. So I find it hard to think that this is an inconsistency. Respectfully, I'd like to respond to that two ways. First being that when given an opportunity to explain that in the brief to the board, Sharma said the common meaning of hospitalized is one that is checked in as a patient and remained in the hospital for some time. That explanation doesn't explain the difference. Even if he meant hospital, hospitalized, and especially in the interpretation that Petitioner is setting forth, is different. One is staying almost in an inpatient fashion, and the other one is to visit in almost an outpatient fashion. And secondly, respectfully, even if this Court does determine that that's a reasonable inference and that that somewhat explains the discrepancy, the immigration judge's decision and that inference is also supported. And when the two are kind of up against one another, the immigration judge's decision should be afforded deference. Secondly, Sharma's testimony was internally inconsistent, particularly about being arrested. When he was asked by his counsel after giving his testimony about his arrest and his detention, he was asked directly, was there anything else? He replied, no. Fast forward to the later part of the testimony when things are wrapping up and we're at the tail end. Suddenly a claim comes forward that, oh, and in fact, you know, my parents have been consistently getting harassed by the police. They demand money and they've been looking for me. As an initial matter, this is an internal discrepancy. But in addition, this omission was not in his asylum application. It was not in his declaration attached to his asylum application. And it was not in his father's letter. Petitioner was given an opportunity to explain this omission. He never explains, despite being directly asked, why his declaration failed to mention it. And to the extent that it was omitted from his father's declaration, he said, I don't know why. And the immigration judge simply found that this was insufficient, especially since the father, who's really the only one that has personal knowledge of this, was given an opportunity. He knows that his son is applying for asylum and that he's writing this letter on behalf of him to put forth and basically advocate for his son to be granted asylum and fails to mention this key part of his claim that would really go to whether or not he has a well-founded fear of future persecution that's completely omitted. In addition, the documents that the petitioner did submit, it was to, one, the father's letter and two, the doctor's letter. And both of these, as this Court has previously noted, really don't go to the crux of the applicant's claim. They don't actually corroborate his claim that he was arrested, detained, interrogated and beaten by the Indian police. The father's letter really only references his own arrest and circumstances and did not confirm that Sharma was arrested and detained. Furthermore, the doctor's affidavit was not contemporaneous and it basically doesn't state when the medical treatment was provided. So it fails to confirm that it's a result of these injuries that he actually sought treatment. The Respondent would respectfully note that because the – this Court is reviewing under the Real ID Act under – to review the totality of the circumstances, to the extent that petitioner raised in their brief that these were minor is no longer an issue. They no longer have to go to the heart of the claim under this new standard. And so as a result, petitioner simply failed to demonstrate that the record compels a contrary finding. I would like to note for the Court that if the Court does disagree with the government and finds that Sharma demonstrated that the record compels a contrary finding, especially under the heightened credibility requirements of the Real ID, that this matter should be remanded to the Board to consider whether or not Sharma could relocate. If there's no other further questions from the Board, I'll briefly conclude. I don't think so. Sharma had three opportunities to present his claim to three separate adjudicators. All three adjudicators found that he was not credible. This Court has held that only under the most extraordinary circumstances will it overturn an adverse credibility determination. Sharma's testimony was internally inconsistent. It contradicted submitted evidence that he had. His asylum application and declaration and other documents contained key omissions, all that he was unable to corroborate or explain. And this is not one of those extraordinary circumstances. Therefore, Sharma has failed to demonstrate that the record compels a finding contrary to that of the immigration judges. Thank you. Thank you. All right. Thank you, counsel. The matter just argued will be submitted. And we'll next hear from Amanda and Sam.
judges: Fletcher, Rymer, Fisher